Joseph CARROLL, Plaintiff,

v.

ASSOCIATED MUSICIANS OF GREAT-
ER NEW YORK, LOCAL 802, and
American Federation of Musicians of
the United States and Canada, Defend-
ants.

United States District Court
S. D. New York.

Jan. 15, 1963.

Godfrey P. Schmidt, New York City, for plaintiff.

Ashe & Rifkin, New York City, for defendant Associated Musicians of Greater New York, Local 802, Eugene Victor, New York City, of counsel.

McGoldrick, Dannett, Horowitz & Golub, New York City, for defendant American Federation of Musicians of the United States and Canada, Emanuel Dannett, New York City, Jerome H. Adler, Herbert D. Schwartzman and Eugene Mittelman, New York City, of counsel.

LEVET, District Judge.

This action, the fifth, continues unabated this "battle of injunctions" between the parties and adds the latest chapter to the rhapsody of their contest.[1] Presently the plaintiff Carroll seeks injunctive relief requiring the nullification of his expulsion from defendant unions; his reinstatement as a member and the prevention of imposition by the

1. The other actions are 60 Civ. 1169; 60 Civ. 2939; 60 Civ. 4025 and 60 Civ. 4926. Collectively, these actions have occasioned eleven appeals to the Court of Appeals, although only two have gone to final judgment. Docket Nos. 26278 [284 F.2d 91 (1960)]; 27013–16 [295 F.2d 484 (1961)]; 27769–72 [at present undecided]; 27844–

45 [2 Cir. Nov. 21, 1962]. A companion case, Cutler v. American Federation of Musicians, 62 Civ. 2552 (Cutler action) involves the same subject matter as 60 Civ. 1169 and 60 Civ. 4025. It has as yet occasioned only one appeal [Docket No. 27946], at present undecided.

defendants of any retaliatory measures or any interference with his business. The action is premised on the allegation that, in expelling him, the defendants violated Section 101(a) (2), 101(a) (4), 101(a) (5) of the Labor Management Reporting and Disclosure Act of 1959, 73 Stat. 522, 29 U.S.C. § 411.

The controversy has a long and dissonant history, without a knowledge of which the present action and its present disposition cannot properly be readily understood.

Two of the actions (60 Civ. 1169 and 60 Civ. 4025) charged the defendants with violating Section 302 of the Labor Management Relations Act (LMRA), as amended, 29 U.S.C. § 186, by exacting from plaintiffs, as employers, (a) a 10% traveling surcharge; (b) a 1½% local tax and (c) a welfare overcharge of $1.00 per man per engagement. These actions were tried before me on March 5-9, 1962. After finding that the plaintiffs (Carroll and others) were acting as employers in the single engagement field and that, as such, these exactions were illegal, the complaints were dismissed because the plaintiffs lacked standing to challenge the taxes, having failed to show that as ex-members they were obligated to pay the illegal taxes or that they were subject to any reprisals by the defendants for failure to do so. (206 F.Supp. 462 (S.D.N.Y.1962).) Hereinafter these actions are referred to as the "302 actions."

In the other two actions (60 Civ. 2939 and 60 Civ. 4926), which remain to be tried, the plaintiffs, Carroll and others, allege that the defendant unions conspired with certain orchestra leader-employers to fix prices in violation of the Federal anti-trust laws. Specifically these actions were directed against certain price lists issued by defendants. 60 Civ. 2939 is directed against the price list governing single and steady engagements promulgated by Local 802. 60 Civ. 4926 similarly attacks the "General Scale Increase for Special Class Club Dates," promulgated by the defendants.

In the Cutler action, I found that Cutler, an orchestra leader operating in a manner essentially identical to the plaintiff Carroll, was an employer when operating in the single engagement field and, as to him, the local tax and the traveling surcharge were illegal as violative of Section 302, 29 U.S.C. § 186. (See Opinion, Findings of Fact and Conclusions of Law, filed November 2, 1962.)

At the hearing held in this case both sides stipulated that the court might enter final judgment in this case (as to injunctive relief) based on a record consisting not only of the papers filed in this case but in all the prior proceedings, testimony and exhibits in the other actions.

After considering this record as stipulated to by the parties, the court makes the following Findings of Fact and Conclusions of Law: [2]

## FINDINGS OF FACT

### I. THE PARTIES

1. Plaintiff Joseph Carroll, at all times relevant herein, was and is an orchestra leader engaged in the so-called "single engagement field" [3] (302 Carroll 258) and until January 2, 1962, was, and for many years had been, a member of defendant unions.

---

2. In view of the multi-lateral nature of the record in this case, the following designations have been adopted:

    (1) Testimony, affidavits and exhibits in the Section 302 actions are prefixed by "302."

    (2) Testimony, affidavits and exhibits in the anti-trust actions are prefixed by "anti-trust."

    (3) No special designation is given to the papers expressly filed in this case.

3. A single engagement as defined in the By-Laws of Local 802 (302 Pl. Ex. 29, Art. X, p. 63) is a musical performance generally for one night but always less than one week, including, but not limited to, such types of functions as weddings, commencements, debutante parties, fashion shows, sports events, college or high school dances and other social events. (302 Cutler 69, 242-43; 302 Arons 438, 457; 302 Pl. Ex. 53, p. 39)

2.  Defendant American Federation of Musicians of the United States and Canada (Federation) is a labor union or labor organization within the meaning of Section 3, subdivision (i) of the Labor Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 402(i). It is affiliated with the AFL–CIO and its principal office and place of business is at 425 Park Avenue, New York, N. Y. It is an international union comprising 683 local unions located throughout the United States and Canada. (302 Ballard 665, 667)

3.  Defendant Local 802 is a labor organization within the meaning of Section 3, subdivision (i) of the Labor Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 402(i), and is affiliated with the defendant Federation. Its principal office and place of business is located at 261 West 52 Street, New York 19, N. Y. Local 802 represents, among others, members who are leaders and sidemen[4] in the single engagement field. Under Federation By-Laws, the territorial jurisdiction of Local 802 consists of the five boroughs of New York City and the Counties of Nassau and Suffolk. (302 Pl. Ex. 12, Section 6, p. 5; 302 Cutler 80–81; 302 Arons 453)

4.  Membership in a local affiliated with the Federation implies membership in the Federation. (302 Pl. Ex. 29, §§ 10, 11; 302 Arons 430)

## II.  THE PLAINTIFF'S RELATIONSHIP AND POSITION IN THE INDUSTRY

5.  The single engagement field is an industry affecting interstate commerce. Orchestra leaders, such as plaintiff, fulfill engagements outside the state in which they usually operate and in which their principal offices are located. (302 Pl. Exs. 19, 21, 40, 41; 302 Cutler 154–55, 185; 302 Carroll 265–68; 302 Peterson 349–53, 383–87, 397–99) Travel by orchestras in the single engagement field composed of members of defendant unions is contemplated by defendant unions and regulated by them in various ways. See, e. g., Ballard Aff. Ex. A, pp. 104, 109, 114–15; 302 Pl. Ex. 7, p. 23. Defendants' own publications and practices, such as their 10% traveling surcharge, their rules and regulations pertaining to traveling members, their mileage charges, demonstrate that defendants unions represent members (both leaders and sidemen) in the single engagement field whose engagements require a constant continuous stream of trade and commerce between the states of the United States. (302 Def. Exs. AE, AL, AQ, AR, AR1)

6.  Plaintiff Carroll devotes his full time to his profession as orchestra leader, and his relationship with his clients, who are normally engaged in other businesses or professions, is transient in nature. As an orchestra leader, plaintiff regularly employs sidemen who are members of defendants, to whom he regularly pays union wages, and who work under union standards prescribed by defendants.

7.  Plaintiff Carroll fulfills engagements outside of the State of New York, in which he usually operates and in which his principal office is located. (302 Pl. Exs. 19, 21, 40, 41; 302 Carroll 265–68)

8.  In the course of his business, plaintiff Carroll, among other things, customarily does the following:

(a) Organizes his own band (302 Carroll 260);

(b) Maintains his own offices, where he employs steady and/or part-time employees (302 Cutler 77–78; 302 Peterson, 347, 360);

(c) Acquires business as a result of his own contacts, reputation and personal solicitation (302 Carroll 261–62);

(d) Engages in and pays for advertising and prominently displays his name wherever his engagements are played, indicating that the orchestra is the Jo-

---

4.  The term "sidemen" refers to musicians who perform in a band or orchestra but does not include the leader or conductor of said band or orchestra.

seph Carroll Orchestra (302 Cutler 80–85, 87, 116, 127–28, 260–62, 347; 302 Peterson 360);

(e) Negotiates and signs contracts with purchasers of music (302 Carroll 260–61; 302 Cutler 91; 302 Peterson 359);

(f) Leads or conducts his own orchestra (302 Carroll 260) and appoints sub-leaders to lead when he does not do so himself (302 Carroll 276);

(g) Decides on how his orchestras are to render their pieces, chooses the tempo and decides on the dynamics, tone coloring, volume and the type of syncopation, if any, which is to characterize the performance of his orchestras (302 Carroll 269–70);

(h) Decides, subject to union minimum requirements, on the number (302 Carroll 264) and qualifications of sidemen who are to play in his orchestras (302 Carroll 262);

(i) Calls for rehearsals and trains his orchestras if he deems it necessary (302 Carroll 275);

(j) Corrects sidemen during a performance, if necessary, and otherwise disciplines or discharges those who are unsatisfactory. (302 Carroll 273)

9. There is no evidence that purchasers of music contributed, or had the ability to contribute, musical skill or direction which would give them genuine or effective control over the individual methods employed by Carroll and his orchestras in rendering performances.

10. Carroll pays all expenses connected with the performances of his orchestras, including, among other things, subject to union minimums, sidemen's salaries (302 Carroll 262–63); uniforms, if any, worn by his sidemen during engagements (302 Carroll 270); mileage fees, cartage fees, food and lodging for his orchestras (302 Carroll 265, 277); sheet music racks; and special arrangements of music to be played by his orchestras. (302 Carroll 270)

11. Carroll, in connection with the employment of his sidemen, withholds and pays over to the appropriate governmental agencies federal and state withholding taxes and social security. In addition, he pays workmen's compensation and disability insurance on behalf of his sidemen. These items are paid because, under the particular governmental regulations involved, orchestra leaders are regarded as "employers." (302 Carroll 274)

12. This court has heretofore found that as to orchestra leaders who act as employers in the single engagement field, the 10% traveling surcharge defined and promulgated by defendants in Article 15 of the Federation's Constitution is not legally collectible from said orchestra leaders. (See Cutler v. American Federation of Musicians, 62 Civ. 2552 (S.D.N.Y., November 2, 1962); cf. Carroll v. American Federation of Musicians, 206 F.Supp. 462.)

## III. LOCAL 38 CHARGES

13. On May 18, 1961, plaintiff was rehearsing with a seven-man orchestra for a show to be performed on May 19–20, 1961 at the Scarsdale High School with a dance to follow on Saturday night, May 20, at the Bonnie Briar Country Club. On May 18, 1961, he informed a business agent of Local 38 of the number of musicians at each performance. On May 19, 1961, plaintiff informed John Ravese, secretary of Local 38, of the engagement. Ravese requested plaintiff to inform him of the amount plaintiff was being paid for the engagement. Plaintiff refused to do so. (Ravese Aff., pp. 1–2)

14. On May 29, 1961, Ravese wrote plaintiff:

"This is to advise that you are charged with failure to file contract, or in lieu thereof a notification containing essential details for your engagements at Scarsdale High School on May 18, 19, 20, ~~and Bonnie Briar Club on May 20.~~ [sic] This is a violation of Article 17, Sections 1, 2, of the National by-laws and Article XIII, of the Local by-laws.

"Accordingly, you are summoned to appear before the Executive Board of this Local to answer said charge on Monday, June 19, 9:00 P.M. at this office 132 Larchmont Ave., Larchmont, N. Y." (Ravese Aff., Ex. 1)

15. Article 17, Section 1 of the National By-Laws in substance requires a member of the Federation or a leader to submit his contract for the engagement to the Local in whose jurisdiction it is to be performed, or, in lieu thereof, to file a written statement explaining the conditions under which it is to be played, including the amount of money contracted for. (Ballard Aff., Ex. A)

16. In response, plaintiff appended a note to the letter of May 29, 1961, stating that the union delegate was informed of the details of the engagement at the rehearsal on May 18, 1961 and that Ravese himself had been informed by phone on May 20. Plaintiff requested the amount of the traveling surcharge which was due on the engagements. Plaintiff stated that the Form B contract would never be used by him as long as it remained in its present form. The note then stated:

"5/18   7 men just a show in a high school
No dancing—how much tax?

"5/19   the same?

"5/20   the same?

"5/20   Dancing at Bonnie Briar 5 men 11 to 2 $13.20???"

(Ravese Aff., Ex. 1, p. 2)

17. Plaintiff did not appear at the hearing on June 19, 1961.

18. On June 22, 1961, Ravese requested plaintiff to pay the sum of $13.20 as a traveling surcharge for the Bonnie Briar Club engagement of May 20, 1961. (Anti-trust Carroll Sept. 10, 1962 Aff., Ex. E)

19. Ravese, pursuant to the directions of the Executive Board of Local 38, referred the matter to Stanley Ballard, secretary of the Federation, on June 27, 1961. (Ravese Aff., Ex. 2)

20. On July 24, 1961, Ballard wrote to plaintiff as follows:

"Enclosed please find the charges preferred against you by Local 38, Larchmont, New York for alleged violation of Article 16, Section 1A of the A. F. of M. By-Laws in that Local's jurisdiction.

"You may at your option have the hearing on these charges by appearing personally before the Federation Executive Board or its designee, or you may submit your defense in writing to be heard and decided by the Board on the basis of written materials.

"You are directed to reply within 14 days to this office—either requesting a hearing in person or submitting a written reply. Failure to reply in any manner may result in an award and disciplinary action against you by default. If you submit a written answer to the charges your reply should consist of statements made by persons with personal knowledge of the facts therein (and a clear and concise statement of your position) and should be submitted in duplicate."

(Ravese Aff., Ex. 3)

21. Plaintiff replied by letter of August 11, 1961, contending that (1) Local 38 has not in the past demanded the filing of the Form B contract, and in lieu thereof accepted informally simply the date, place, number of musicians and hours; (2) that this information was furnished to Local 38; and (3) similar charges were recently dismissed against Ben Cutler for this reason. (Ravese Aff., Ex. 4, pp. 1, 2)

22. In rebuttal, Ravese, by letter of August 29, 1961, contended that the information concerning the engagement should have been furnished prior to the rehearsal, not simply prior to the show.

23. This rebuttal was sent to the plaintiff by Ballard and plaintiff was given an opportunity to reply. (Ravese Aff., Ex. 6)

24. On September 8, 1961, plaintiff replied, contending that there was no connection between the performances at the high school and the country club and that since no tax was due on the performances at the school it was unnecessary to advise the Local of this activity. (Ravese Aff., Ex. 7)

25. On September 26, 1961, plaintiff was informed that the case was to be submitted to the International Executive Board for its decision. On November 6, 1961, plaintiff was informed that the International Executive Board had found him guilty of the charges preferred by Local 38, and the Board imposed a fine of $50. Plaintiff was given until December 6, 1961 to pay the fine, in the absence of which he would be expelled from membership. (Ravese Aff., Ex. 10)

26. The $50 fine was not paid and on December 27, 1961 Ballard wrote to Max Arons, secretary of Local 802, of which plaintiff was a member, to remove plaintiff's name for failure to pay the fine. (Ravese Aff., Ex. 11)

27. By letter dated January 2, 1962, plaintiff was notified by Arons of his removal from membership. (Ravese Aff., Ex. 12) Plaintiff received the notification on January 3, 1962. (Carroll Aff., p. 3)

28. Article 8, Section 1 of the Federation's By-Laws provides:

"An appeal can be made to the International Executive Board from any decision, of whatever kind, of a Local or any other authority. A further appeal can be made to a convention in any case involving an ultimate fine of $500.00 or more, or expulsion from membership in the Federation, regardless of whether the original decision was made by a Local or by the International Executive Board." (Ballard Aff., Ex. A, p. 60)

No appeal to the convention was taken by the plaintiff.

29. A convention was to be held June 11–14, 1962 at Pittsburgh, Pennsylvania. (Ballard Aff., Ex. A, p. 3)

30. No charges were preferred against plaintiff Carroll by Local 38 for the non-payment of the traveling surcharge, although certain of these payments were then outstanding. The outstanding amounts included $13.20 for the May 20th Bonnie Briar Club engagement. (Anti-trust Carroll Sept. 10, 1962 Aff., Ex. E)

IV. LOCAL 802 CHARGES

31. On April 17, 1961, the following charges were lodged against plaintiff by the Sergeant At Arms of Local 802 for violation of various provisions of the By-Laws:

(a) Failure to pay prescribed wage scales on certain engagements in violation of Article IV, Section 1(d). (Shendall Aff., Ex. 1a)

(b) Failure to file properly executed contracts or to report certain engagements as provided in Article IV, Section 1(g). (Id., Ex. 1b)

(c) Contracting engagements for less than the prescribed wage scales in violation of Article IV, Section 1 (n). (Id., Ex. 1c)

(d) Failure to comply with instructions to appear before the Executive Board pursuant to an authorized notice in violation of Article IV, Section 1(a). Id., Ex. 1d)

(e) Causing other members to violate constitution, by-laws and the price list in violation of Article IV, Section 1k. (Id., Ex. 1e)

(f) Unfair dealing in violation of Article IV, Section 1jj. (Id., Ex. 1f)

32. Plaintiff was informed of these charges and that a hearing would be held on April 20, 1961.

33. By letter dated April 18, 1961, plaintiff requested an adjournment due to prior commitments. (Shendell Aff., Ex. 2) Trial Board granted a postponement to April 27, 1961. Again, by letter dated April 26, 1961, plaintiff requested an adjournment of the April 27th hearing to attend a funeral. The Trial Board postponed the hearing to May 4, 1961.

On May 4, 1961, Godfrey P. Schmidt, attorney for plaintiff, requested the hearing be deferred until the litigation then before the court is decided, stating:

" * * *

"My client cannot properly prepare his defense unless and until certain cases now pending in the United States District Court for the Southern District of New York are first resolved. (Civil Actions #1169–60, 2939–60, 4025–60 and 4926–60)

"Nor can my client receive a full and fair hearing unless he is able to put into evidence during the union trial the eventual rulings in those civil actions.

"For these reasons I think that trial and disciplinary action against Mr. Carroll now will violate Section 101(a) (5) of the Labor Management Reporting and Disclosure Act. It will also violate long accepted standards of fairness and due process." (Shendell Aff., Ex. 3)

Plaintiff's application for deferment of his case was denied by Shendell, Chairman of the Local 802 Trial Board, by letter dated May 4, 1961. A hearing was set for May 16, 1961. (Shendell Aff., Ex. 4)

34. Plaintiff failed to appear at the hearing and on May 16, 1961 the Trial Board proceeded to hear evidence in support of the charges. Decision was reserved. (Shendell Aff., Ex. 5) In his examination before trial on January 22, 1962, plaintiff admitted that he on several occasions failed to pay union scale wages. (Shendell Aff., Ex. 11)

35. On May 23, 1961, plaintiff was found guilty of all charges and fined $450. Additionally, plaintiff was directed "within one week from the date he receives notice of this decision to pay all members of Local 802 A. F. of M. the difference between the amounts they received from the defendant and the wage scale effective on the date when the services were performed for all engagements played by members under the de-

fendant's leadership after June 15, 1960." (Anti-trust Carroll Sept. 10, 1962 Aff., Ex. A)

36. Plaintiff was notified of the decision of the Trial Board by letter dated May 23, 1961. (Shendell Aff., Ex. 7)

37. Plaintiff, on May 31, 1961, requested the opportunity to present new evidence and by telegram dated the same day he was advised that such new evidence could be presented to the Trial Board on June 6, 1961. (Shendell Aff., Ex. 8)

38. At plaintiff's request, Shendell summoned several witnesses the plaintiff designated to appear at the hearing on June 6, 1961. (Shendell Aff., Ex. 9)

39. Plaintiff did not attend the hearing on June 6, 1961, but sent a three-page letter in rebuttal to the charges, admitting that he failed to pay union scale but alleging complicity in the union and its members. (Shendell Aff., Ex. 10)

40. On June 20, 1961, the Trial Board dismissed each of plaintiff's defenses. (Shendell Aff., Ex. 12) By letter dated June 20, 1961, plaintiff was notified that the May 16th decision of the Trial Board "remains in full force and effect." (Id., Ex. 13)

41. By letter dated June 22, 1961, plaintiff was notified that his membership in Local 802 was terminated for failure to comply with the May 16th decision of the Trial Board. (Shendell Aff., Ex. 14)

42. At plaintiff's request, Herman D. Kenin, president of the Federation, on June 22, 1961 extended the time to appeal to July 10, 1961. (Shendell Aff., Ex. 15) On July 10, 1961, plaintiff submitted his appeal to the Federation, enclosing a check for $450 as a deposit for the fine. (Id., Ex. 16) The Federation acknowledged the receipt of the $450 check in its letter of July 21, 1961, but told plaintiff that in order to perfect his appeal the amount of alleged underpayments would have to be deposited (Shendell Aff., Ex. 17) or in lieu thereof a surety bond in the sum of $1,000. (Id., Ex. 18)

43. Plaintiff filed a bond for the amount but the form was unacceptable to the Federation. In a letter dated September 20, 1961, the Federation dictated the terms which, if included, would make the bond acceptable. (Shendell Aff., Ex. 19) On October 13, 1961, plaintiff wrote to the Federation, stating that the bond was being processed. (Id., Ex. 20) A new bond was never filed.

44. No further action was taken by the Federation on the appeal in view of the fact that on December 27, 1961 plaintiff had been removed from membership in the Federation because of charges preferred against him by Local 38. (See Finding of Fact No. 27)

45. On October 24, 1961, Godfrey P. Schmidt, in behalf of plaintiff, wrote to the Federation:

"My client will not object to mere expulsion. But where you pursue him with reprisals of any kind because of such expulsion, I am compelled in his interest to make use of the remedy to which the Court of Appeals calls attention at the top of p. 13 of its opinion, where your conduct necessitates such a course.

"Accordingly on behalf of my client, I demand a return of the fine which you exacted from him in this connection and which he paid under duress. Also I request that you retract any warnings to Mr. Carroll's employees or potential employees to the effect that they are not permitted to work for Mr. Carroll because of such expulsion." (Anti-trust Carroll Sept. 10, 1962 Aff., Ex. B)

46. On December 1, 1961, a preliminary injunction order was entered by Judge Palmieri of this court in the 302 actions enjoining defendants from interfering with the plaintiff's business, from inflicting any reprisals (except purely intra-union penalties, such as expulsion) and from threatening in any way any musicians, customers or prospective customers of plaintiff because of plaintiff's failure to pay the traveling surcharge or the local tax. The injunction was vacated after the trial of the 302 actions and both I and the Court of Appeals denied motions to continue the injunction pending appeal.

47. On July 3, 1962, plaintiff apparently sought to pay the fine by forwarding a check for $50, which was refused because he was no longer a member of defendant unions. On July 6, 1962, Ballard returned plaintiff's check for $24.50 as dues. On June 12, 1962, Arons returned several of plaintiff's contracts because of his nonmembership. (Anti-trust Carroll Sept. 10, 1962 Aff., Ex. F)

48. On September 7, 1962, members of the defendant unions, pursuant to the directions of the defendants, refused to play for plaintiff "while he plays an instrument in his orchestra or while he leads it." (Anti-trust Carroll Sept. 10, 1962 Aff.)

49. Article 13, Section 5 of the Federation By-Laws provides:

"A member of the Federation cannot play with suspended or expelled members or with non-members in the jurisdiction of a Local or of the Federation on competitive engagements unless it be with the consent of the Federation, or in cases wherein the laws of the Federation provide otherwise." (Ballard Aff., Ex. A)

Article IV of the By-Laws of Local 802 is to the same effect. (Ballard Aff., Ex. B)

## DISCUSSION

### EXPULSION

Plaintiff challenges his expulsion from the Federation and its affiliate, Local 802, as being violative of Sections 101(a) (2), 101(a) (4) and 101(a) (5) of the Labor Management Reporting and Disclosure Act of 1959, 73 Stat. 522, 29 U.S.C. § 411. The first question is whether plaintiff has exhausted his intra-union procedures as is required by Section 101(a) (4), 29 U.S.C. § 411(a) (4).

Plaintiff's formal "erasure" from membership on January 2, 1962 resulted

from the decision of the International Executive Board finding him guilty of the charges brought by Local 38. (Finding of Fact No. 27) Under the Federation's By-Laws (Article 8, Section 1), the only appeal from a decision of the International Executive Board resulting in expulsion is an appeal to the convention. The next convention was to be held on June 11–14, 1962. This would have been in excess of the maximum four-month period set in Section 101(a) (4) for reasonable intra-union appeals. See Parks v. International Bhd. of Elec. Workers, 203 F.Supp. 288 (D.Md.1962). Accordingly, with respect to the Local 38 charges the plaintiff has exhausted his intra-union remedies prior to the commencement of this suit.

■ Pending at the same time, however, were the charges brought by Local 802. After having been found guilty by the Trial Board, plaintiff sought to appeal the decision. His appeal was conditioned upon the filing with the Federation a bond of $1,000 on satisfactory terms. Such a bond was never filed and the appeal never perfected. Clearly, this was a failure to exhaust reasonable union hearing procedures. It is true, as the plaintiff contends, that the time from the filing of these charges (April 17, 1961) to their final disposition (presumptively December 27, 1961) was longer than four months. However, most of the delays were occasioned by the plaintiff's own conduct in seeking adjournments and failing to file the bond. He cannot take advantage of his own delays to satisfy the statute.

■ The plaintiff contends that his expulsion is based solely on the Local 38 charges. This is error. It is true that the Federation took no formal action on the appeal. But that was due to plaintiff's failure to perfect the appeal. In the absence of an appeal, the decision of the Trial Board remained in full force and effect. Accordingly, both charges form the basis for plaintiff's expulsion.

■■ With respect to the Local 802 charges, it is clear that the plaintiff failed to exhaust reasonable intra-union remedies. The exhaustion requirement contained in 29 U.S.C. § 411 is not an absolute requirement. Detroy v. American Guild of Variety Artists, 2 Cir., 286 F.2d 75, cert. denied, 366 U.S. 929, 81 S.Ct. 1650, 6 L.Ed.2d 388 (1961). In view of the dual basis of the plaintiff's expulsion and the position of the defendants in failing to provide sidemen when the plaintiff conducts, his failure to exhaust his union remedies will not bar this court's consideration of the legality of the Local 802 charges. Detroy, supra; Associated Orchestra Leaders of Greater Philadelphia v. Philadelphia Musical Society etc., 203 F.Supp. 755 (E.D.Pa. 1962). This court, therefore, now considers the legality of both charges.

■ In each of the proceedings brought against him, the plaintiff was given a written specification of charges. (See Findings of Fact Nos. 20 and 32) His allegation that specificity was lacking because he was not furnished the names of the sidemen who did not receive union scale wages is without merit. In each he was given a reasonable time to prepare his defense. In fact, he was granted several adjournments in the proceedings. (See Findings of Fact Nos. 33, 42) The plaintiff's contention that he should have been given an adjournment of these charges until the final disposition of his court actions is simply without merit. In each he was accorded a full and fair hearing. Undoubtedly, the term "full and fair hearing" requires at its minimum an unbiased and disinterested tribunal, Parks v. International Brotherhood of Elec. Workers, 203 F.Supp. 288, 307 (D.Md.1962). His allegation of bias because of his litigious history is unsupported in the record. Primarily, the charges of bias are based on certain statements made by defendants in their union publications. However, no dates are given for these statements, nor their source, nor has there been any showing of connection between the statements and the persons who composed the various Trial Boards which found the plaintiff guilty.

■ There was substantial evidence to support the plaintiff's violation of the

union by-laws. In fact, plaintiff himself admitted several of the charges. It is not for this court to reexamine the evidence in order to see whether it would have arrived at the same conclusion as did the Trial Board. This court is not free to substitute its judgment for that of the union tribunal. Rosen v. District Council No. 9, etc., Brotherhood of Painters, etc., 198 F.Supp. 46 (S.D.N.Y. 1961). See also Phillips v. Teamsters, etc., Union, 209 F.Supp. 768 (D.N.J. 1962). Accordingly, the plaintiff has not proven a violation of the rights guaranteed him by Section 101(a) (5), 29 U.S.C. § 411(a) (5).

There is no evidence whatsoever from which to conclude that the defendants have in any wise abridged the plaintiff's rights to freedom of speech and assembly. No violation of 29 U.S.C. § 411(a) (2) has been proved.

A more troublesome question arises from the alleged violation of the plaintiff's right to sue, 29 U.S.C. § 411(a) (4). In pertinent part, the statute provides:

"No labor organization shall limit the right of any member thereof to institute an action in any court, * * * irrespective of whether or not the labor organization or its officers are named as defendants or respondents in such action or proceeding * * *."

At a minimum this subsection would render void any union provision providing for expulsion of a member for the bringing of suit against the union. See Cox, Internal Affairs of Labor Unions Under the Labor Reform Act of 1959, 58 Mich.L.Rev. 819, 839 (1960). The plaintiff contends that he was expelled from the union because of violations of the very union regulations he was challenging in the various suit he has filed. There is no doubt that the plaintiff did commit the violations charged against him. The question then becomes whether a union member, upon filing a suit against the union, must still continue to obey the regulations which he has challenged in the suit.

Generally it seems the least that membership can compel is obedience to the By-Laws and regulations until successfully challenged either intramurally or before a court or administrative agency. By becoming a member of a union, the worker, in effect, agrees to be governed by the Constitution and By-Laws of the organization. Cleveland Orchestra Comm. v. Cleveland Fed. of Musicians, etc., 6 Cir. 1962, 303 F.2d 229; Rosen v. District Council No. 9, etc., Brotherhood of Painters, etc., 198 F. Supp. 46 (S.D.N.Y.1961); Smith v. General Truck Drivers, etc., Union, 181 F. Supp. 14 (S.D.Cal.1960). No automatic stay against the enforcement of union regulations attaches upon the mere filing of a civil action, *absent* injunctive relief preliminarily granted by a court.

With respect to the Local 38 charges, the Federation found the plaintiff had violated Article 17, Section 1, which required orchestra leaders to file their engagement contracts. The plaintiff has failed to establish that this provision of the By-Laws is inextricably bound to the collection of the traveling surcharge, which was found illegal both in the 302 and the Cutler actions. The mere filing of suit does not give a union member a *carte blanche* to violate union regulations which may be incidentally connected to the challenged provisions.

The plaintiff also alleges that the Local 38 charges were discriminatorily enforced against him. He alleges that they were not and are not enforced against anyone except those who have chosen to bring suit against the union. Certainly, it would be a reprisal and an apparent violation of Section 101(a) (4), 29 U.S.C. § 411(a) (4), if the regulations under which a suing union member is expelled have lain dormant in the labyrinths of the union By-Laws, only to be suddenly resurrected and enforced against only those members who have sued the union. But that is not the case here. There is insufficient evidence to conclude discriminatory enforcement. The only evidence is the unsupported

statements of the plaintiff that he and other orchestra leaders have for many years failed to file their contracts. No proof was offered in support of this, other than the plaintiff's own statements. This is insufficient since the union has many members and no proof of a general policy in this respect was submitted.

The gravamen of the Local 802 charges was the failure to pay the sidemen the union wage scale for their services. From the record it appears that the plaintiff admitted the charge. His defense of complicity in the union is without merit. It is true that these wage scales are attacked as illegal in the antitrust cases. But that in itself does not authorize their violation by a member of the union. The minimum that membership can require is compliance with the regulations, especially wage scales, until successfully challenged. If a member chooses not to obey the challenged regulation and thereby suffers expulsion, he stakes his all on the efficacy of the court action. If unsuccessful there, he cannot subsequently challenge his expulsion because its basis was the very regulations he challenged.

Here the plaintiff chose to virtually voluntarily relinquish his membership, as the letter of October 24, 1961 (Finding of Fact No. 45) makes evident. "Where an employee voluntarily relinquishes membership in a qualified union, as plaintiff did here, he cannot complain that the union unfairly ousted him from membership or has refused to reinstate him." LaFrance v. Brotherhood of Locomotive Firemen etc., 204 F.Supp. 13, 14 (E.D.Mich.1962). As subsequent events make evident, that was an unfortunate choice, but a choice it was nonetheless. Accordingly, there was no violation by defendants of 29 U.S.C. § 411 (a) (4).

### REINSTATEMENT

Plaintiff, somewhat inartistically, alleges as a second cause of action that he was wrongfully and unlawfully denied reinstatement and restoration to full rights of membership. (Pars. 13–16 of complaint)

The record makes clear that the plaintiff has tendered no formal application for reinstatement. His only gesture was the proffer of the $50 fine imposed by Local 38. Also, he has failed to pay the deficiencies under union scale for which he was expelled by Local 802. The decision of the Local 802 Trial Board required him "within one week * * * to pay all members * * * the difference between the amounts they received from the defendant and the wage scale effective on the date when the services were performed." There is no proof that he has attempted to remedy his admitted defaults. Accordingly, the defendant's present refusal to reinstate plaintiff appears justifiable.

Even assuming that the refusal of defendants was not in accordance with the union's By-Laws, Section 101 would not appear to afford plaintiff any relief here. Absent a finding of *unlawful* expulsion, the subsequent refusal to reinstate is not by itself an actionable wrong under the statute. Smith v. General Truck Drivers etc. Union, 181 F.Supp. 14 (S.D.Cal.1960). Not falling within the purview of the statute, the expressed jurisdictional grant of Section 102, 29 U.S.C. § 412, would be inapplicable.

No pendent jurisdiction attached to the reinstatement cause of action in this case since the action under 29 U.S.C. § 411 is separate and distinct from the cause of action for wrongful refusal to reinstatement, absent a finding of wrongful expulsion. As the Supreme Court observed in Hurn v. Oursler, 289 U.S. 238, 246, 53 S.Ct. 586, 589, 77 L.Ed. 1148 (1933):

"The distinction to be observed is between a case where two distinct grounds in support of a single cause of action are alleged, one only of which presents a federal question, and a case where two separate and distinct causes of action are alleged, only one of which is federal in character. In the former * * * the federal court, even though the federal ground be not established, may nevertheless retain and dispose of

the case upon the nonfederal *ground;* in the latter it may not do so upon the nonfederal cause of action."

See also, Cox, Internal Affairs of Labor Unions Under the Labor Reform Act of 1959, 58 Mich.L.Rev. 819, 838 (1960).

■ Absent an express basis for federal jurisdiction, power to decide whether a union has abided by its own by-laws and rules, remains with the state courts. International Ass'n of Machinists v. Gonzales, 356 U.S. 617, 78 S.Ct. 923, 2 L.Ed. 2d 1018 (1958). No intention can be found in the present statute to federally preempt the cause of action with respect to reinstatement. See 29 U.S.C. § 413; Cox, supra, at 838. This determination is, however, without prejudice to the plaintiff's right to maintain such action as he may be advised in the appropriate forum.

## RES JUDICATA

The defendants contend that this action is barred by res judicata. This would be true if this action were based upon the same cause of action as the 302 actions since the judgment there in favor of the defendants is conclusive as to all matters which were litigated or might have been litigated in the first action. See Restatement, Judgments, § 45, comment (a) (1942).

■ Clearly, the present cause of action is different than that of the 302 actions. Here, the plaintiff asserts the illegality of his expulsion from the unions on three statutory grounds. The 302 actions attacked the legality of certain union taxes. The difference is apparent. This is not a case where the plaintiff maintains an action on the same cause of action, presenting only another ground for relief. Restatement, Judgments, § 63, comment a (1942).

However, the question remains whether the 302 judgment has a collateral effect on this action. In the 302 actions, judgment was rendered for the defendants because the plaintiffs failed to prove their standing, that is, that either as ex-members they were under any compulsion to pay the illegal taxes or that their expulsion from the unions resulted from their failure to pay these taxes. Such proof was essential to their success.

■ Collateral estoppel, simply stated, is that, in a subsequent action between the parties on a different claim, the prior judgment is conclusive as to the issues raised in the subsequent action if these issues were actually litigated and determined in the prior action. It is not conclusive as to questions which might have been but were not litigated in the original action. Restatement, Judgments, § 45, comment c, § 68, comment a (1942).

The requirement that an issue be actually litigated in the prior action is essential to the application of collateral estoppel when that issue arises in subsequent litigation between the parties. Thus, a default judgment has no effect on subsequent litigation on a different cause of action since no issues were litigated. Restatement, Judgments, § 68, comment f (1942).

Where one party fails to raise a claim or defense in one action, he is not precluded from doing so in another action involving similar issues. Cromwell v. County of Sac, 94 U.S. 351, 24 L.Ed. 195 (1876); Buromin Co. v. National Aluminate Corp., 70 F.Supp. 214 (D.Del. 1947). Thus, in Cromwell, an action on matured bond coupons, the plaintiff was not estopped from showing that he was a holder in due course of the coupons, notwithstanding in a prior action, on coupons from the same bonds, brought for the plaintiff's benefit, it was held that the defense of fraud prevailed because the plaintiff failed to prove he had given value. Also, in Buromin, a prior proceeding between the parties as to the priority of invention, did not preclude a party from raising the validity of the patent in a subsequent suit, although the validity issue could have been raised in the prior proceeding. See, generally, Note, Res Judicata, 65 Harv.L.Rev. 838, 840 (1952).

The question of the plaintiff's expulsion and its relation to the illegal taxes was not litigated in the 302 actions.

Under such circumstances, the plaintiff is not collaterally estopped from raising the issue, in spite of the fact that the very failure to litigate that issue in the prior suit resulted in its dismissal. See Restatement, Judgments, § 68, comment r (1942).

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the parties and of the first cause of action. 29 U.S.C. § 412; Burns v. United Bhd. of Carpenters etc., 204 F.Supp. 599 (D. Del.1962).

2. The single engagement field is an industry affecting interstate commerce.

3. Defendants did not violate Sections 101(a)(2), 101(a)(4) and 101(a)(5), 29 U.S.C. § 411, by expelling plaintiff.

4. This court lacks jurisdiction of the cause of action for reinstatement in the absence of an illegal expulsion.

5. This action is not barred by res judicata.

6. The complaint must be dismissed with costs to the defendants.

In view of the above disposition, the plaintiff's motion for preliminary injunction is denied.

Submit judgment accordingly.