Lawrence **ARTHUR,** Herbert **Bass** and Frank **Miller, Plaintiffs,**

v.

**ASSOCIATED MUSICIANS OF GREATER NEW YORK, LOCAL 802, AFM and American Federation of Musicians of the United States and Canada, Defendants.**

**No. 67–Civ. 3828.**

United States District Court
S. D. New York.
Nov. 30, 1967.

On Reargument Jan. 10, 1968.

nett and Jacob Silverman, New York City, of counsel, for defendants.

Godfrey P. Schmidt, New York City, for plaintiffs.

CROAKE, District Judge.

## MEMORANDUM

This is a motion for a preliminary injunction brought on by Order to Show Cause. Plaintiffs are professional musicians known as "sidemen." A sideman is a musical freelancer who makes himself available for specific, short-term engagements on a random basis rather than undertaking steady employment with a band or orchestra. Name orchestra leaders are thus free to play single engagements as frequently or infrequently as they can obtain them, and with orchestras of varying size, by using sidemen as members of these orchestras and paying them on a per engagement basis.

Joseph B. ("Joe") Carroll is an orchestra leader who frequently employs sidemen. Carroll has differed with the American Federation of Musicians (A.F.M.) on occasion and in December 1961 he was expelled from that Union.[1] At various times subsequent to Carroll's expulsion, plaintiffs in the present action performed as sidemen in his orchestra. For this they also were expelled from the Union in accordance with Art. IV, § 1, para. H, of the by-laws of Local 802, A.F.M., which makes it a violation of the by-laws:

> (H) To perform in or with a band or orchestra which is led or conducted by a non-member of the Union or in which a non-member plays an instrument or performs any other work of a musician.

Aggrieved by their expulsion from the Union, plaintiffs brought this action pursuant to § 102 of the Labor-Manage-

McGoldrick, Dannett, Horowitz & Golub, New York City, by Emanuel Dan-

---

1. In sustaining Carroll's expulsion Judge Levet of this court commented: "This action, the fifth, continues unabated this 'battle of injunctions' between the parties and adds the latest chapter to the rhapsody of their contest." Carroll v. As- sociated Musicians of New York Local 802, 235 F.Supp. 161, 163 (S.D.N.Y.1963). For a partial listing of the litigation between Carroll and Local 802, see footnote 1 to Judge Levet's opinion.

ment Reporting and Disclosure Act of 1959 (L.M.R.D.A.),[2] which grants a right to sue in federal court for violations of other sections of the same statute. The other section allegedly violated here is § 101(a) (5) which provides:

(5) Safeguards against improper disciplinary action.—No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing. 29 U.S.C. § 411(a) (5).

Plaintiffs allege that the charges against them were not specific and that they were not given a full and fair hearing. In so far as it refers only to the procedures followed, this allegation is frivolous. It is hard to imagine how the charges might have been more specific[3] and the procedures employed provided at least the mechanics of a full and fair hearing.[4]

Plaintiffs' claim runs deeper, however, than a simple allegation that they were not given a procedurally fair hearing prior to expulsion. They argue in essence that the by-law under which they

were expelled is patently unfair and has been held to violate the National Labor Relations Act (N.L.R.A.).[5] As a result, plaintiffs argue, no proceeding that applies this by-law, however "full and fair" it might be procedurally, can be anything but arbitrary and unfair in a substantive sense.

Plaintiffs' argument rests on the recent decision of the National Labor Relations Board (N.L.R.B.) in American Federation of Musicians v. Glasser, et al., 165 N.L.R.B. 110. In that case the Board outlawed certain applications of a provision of the by-laws of the A.F.M. similar to the Local 802 by-law under which the present plaintiffs were expelled. This section of the A.F.M. by-laws provides:

A member of the Federation cannot play with suspended or expelled members or with non-members in the jurisdiction of a local or of the Federation on competitive engagements unless it be with the consent of the Federation, or in cases wherein the laws of the Federation provide otherwise. Engagements are considered competitive if musicians receive pay for their services or if the employer, in the absence of free services of musicians, would be obliged to pay for such. Art. 13, § 5. Constitution By-laws and Policy of the A.F.M. (1966).

---

2. 73 Stat. 519, 29 U.S.C.A. § 412.

3. The charges were in writing and stated: "I [the Sergeant at Arms] * * * charge the said [name of individual] with Violation and Disobedience of Article IV, Section 1, Par. H of the By-laws of said Local.
Specifications:
"PERFORMING WITH A NON MEMBER OF THE LOCAL HOTEL WALDORF ASTORIA November 27th, 1966"

4. The charges were heard by Local 802's trial board on January 3, 1967. At the hearing, testimony from Union delegates was heard and each of the present plaintiffs submitted a statement which read: "Yes I work for Joseph Carroll as an employee musician in his orchestra; and he is, as the Allegro Official notice makes clear, an expelled member whom it is the purpose of this Union's leader to

boycott, as is apparent from Allegro. I also know that Local 802's by-laws forbid all members from playing with non-members or expelled members."
On January 10, 1967, each of the plaintiffs was found guilty of the charge set forth in footnote 2, supra, and was expelled from the Local. Thereafter, each plaintiff appealed to the A.F.M. In accordance with the A.F.M.'s appeal procedures, each plaintiff submitted a statement of the grounds for setting aside his expulsion; Local 802 submitted an answer; and each plaintiff was afforded an opportunity to rebut Local 802's claims. On June 22, 1967, the International Executive Board of the A.F.M. denied plaintiffs' appeals.

5. 49 Stat. 449 as amended by 61 Stat. 136 and 73 Stat. 519, 29 U.S.C.A. § 141 et seq.

The Board held that application of this provision to an employer who is subject to the jurisdiction of the N.L.R.B.[6] was an unfair labor practice. The theory was that to discipline an employer union member who played with a non-member employee is coercive within the meaning of §§ 8(b) (1) (A) and 8(b) (2) of the N.L.R.A.[7]

Plaintiffs argue that a fair reading of this decision requires that for the same basic reasons (viz., that it is coercive) a union cannot discipline employees who play with or under the direction of a non-member employer. Plaintiffs allege that whether the member leader is expelled for playing with non-member employees or member employees are expelled for playing with non-member leaders the result is the same: To wit, a closed shop is effectively enforced by the union in violation of the N.L.R.A.

■ The argument is ingenious and this court is not without sympathy for the awkward position in which plaintiffs find themselves. But they are in the wrong forum; their argument is essentially that their expulsion was an unfair labor practice and this court has no jurisdiction to determine or remedy unfair labor practices. San Diego Building Trades Council v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959); Garner v. Teamsters Chauffeurs and Helpers Local Union, 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. 228 (1953).

■ If the by-law in question or its equivalent had been squarely held to constitute an unfair labor practice in its application, then there might exist some question as to whether a union tribunal applying it in spite of such holding was affording a "full and fair hearing" within the meaning of § 101(a) (5) of the L.M.R.D.A. Cf. Vars v. International Brotherhood of Boilermakers, etc., 320 F.2d 576 (2d Cir. 1963). Here, no such determination has been made by the Labor Board. Neither is the by-law in question so patently unlawful or unfair as to render its application a sham. There is thus no basis on which to conclude that plaintiffs had less than the full and fair hearing required by § 101 (a) (5). Cf. Gurton v. Arons, 339 F.2d 371 (2d Cir. 1964).

■ By their present motion plaintiffs seek only a preliminary injunction. Defendants, not having countermoved for dismissal or summary judgment, seek only to have plaintiffs' motion denied. Ordinarily, in deciding whether to grant a preliminary injunction, the Court looks to the nature of the harm to each side that will follow a decision either way. See, e. g., American Federation of Musicians v. Stein, 213 F.2d 679 (6th Cir. 1954), cert. denied, 348 U.S. 873, 75 S.Ct. 108, 99 L.Ed. 687 (1954); Doeskin Products v. United Paper Co., 195 F.2d 356 (7th Cir. 1952). In this case, if the injunction is denied, plaintiffs will continue to be unemployable by union orchestras. The Union argues that any harm to plaintiffs resulting therefrom will not be irreparable because they can always be made whole by damages covering lost engagements. Such damages are

---

6. The N.L.R.B. uses certain guidelines in an effort to limit the exercise of its jurisdiction to significant cases involving substantial commerce. Joe Carroll Orchestras do a gross business of over $400,000 a year which places Mr. Carroll well within the Board's guidelines.

7. 8(b) It shall be an unfair labor practice for a labor organization or its agents—
   (1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 7: *Provided,* That this paragraph shall not impair the right of a labor organization to prescribe its own rules with respect to the acquisition or retention of membership therein; * * *
   (2) to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a) (3) of this section or to discriminate against an employee with respect to whom membership in such organization has been denied or terminated on some ground other than his failure to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership; * * * 49 Stat. 449, 29 U.S.C.A. § 158(b) (1) (A) and (b) (2).

difficult to prove, however, since plaintiffs must show that the refusal to hire them was on grounds of their lack of union membership rather than want of ability or some other stated reason.

On the other hand, if the injunction is granted, the Union argues that the by-law in question will be effectively nullified until a decision on the merits is reached. Nothing indicates that large numbers of union musicians are standing in the wings waiting to violate this by-law. Even if they were, the Union can in effect recover its "damages" (and, indeed, make it a very serious gamble for others to challenge the by-law) by announcing that eventual punishment for current violators will be severe if the by-law is upheld. Beyond that, if the Union is certain of the justice of its position, nothing prevents it from continuing to enforce the by-law and requiring each party disciplined to bring his own action.

On balance, it seems clear that the present plaintiffs are suffering and will continue to suffer irreparable harm if an injunction is not granted. The Union, on the other hand, will suffer virtually nothing except wounded pride if the injunction is granted.

But there is more to granting a preliminary injunction than "balancing the equities." In addition to requiring plaintiffs to show that the benefit to them if an injunction issues will outweigh the harm to other parties, it is well established that there must be some possibility that plaintiffs will ultimately succeed on the merits in the underlying action. Hall Signal Co. v. General Ry. Signal Co., 153 F. 907 (2d Cir. 1907); H. E. Fletcher Co. v. Rock of Ages Corp., 326 F.2d 13 (2d Cir. 1963). It is here that plaintiffs' argument runs aground. If the earlier analysis on the merits is correct, plaintiffs may have a plausible claim of an unfair labor practice to be pursued before the N.L.R.B. Plaintiffs may even seek injunctive relief from that body pursuant to Section 10(j) of the N.L.R.A., 29 U.S.C.A. § 160(j). Plaintiffs do not, however, have any claim under § 101(a) (5) of the L.M.R.D.A.

There remains only the possibility that plaintiffs might have a meritorious claim on their pendent cause of action. In paragraph 43 of the complaint plaintiffs allege that "this court has pendent jurisdiction over this [second] cause of action, because the law of the State of New York requires that all union by-laws be reasonable, fair and lawful; * * *." The next paragraph asserts that Art. IV, § 1, para. (H) of Local 802's by-laws is neither reasonable, nor fair, nor lawful. Nowhere in any of their papers do plaintiffs ever again refer to this cause of action. No New York State statutes or cases are cited and the way in which the by-law in question allegedly violates state law is not spelled out. On the present state of the record, therefore, plaintiffs are no more entitled to relief on the second cause of action than on the first. Congress of Racial Equality v. Douglas, 318 F.2d 95 (5th Cir. 1963), cert. denied 375 U.S. 829, 84 S.Ct. 73, 11 L.Ed.2d 61; Societe Comptoir De L'Industrie Cotonniere v. Alexander's Department Stores, Inc., 190 F.Supp. 594 (S.D.N.Y.1961). In addition, if we are correct in the earlier view that plaintiffs do not have a meritorious federal claim, it is settled that at this stage of the proceedings the court would not retain jurisdiction of the pendent state claim. Ruckle v. Roto American Corp., 339 F.2d 24 (2d Cir. 1964).

Under almost any approach, therefore, plaintiffs have virtually no chance of succeeding in this court on the merits. Accordingly, the Motion for a Preliminary Injunction is denied.

So ordered.

## ON MOTION FOR REARGUMENT

Plaintiffs in the above-captioned matter have moved pursuant to General Rule 9(m) for reargument of the motion decided by the undersigned in a memorandum dated November 30, 1967. Defend-

ants have cross-moved for summary judgment.

The motion for reargument is granted. After careful consideration of the materials submitted by plaintiffs, the court adheres to its earlier ruling for the reasons stated therein.

In his supporting papers on the present motion, counsel for plaintiffs has clarified the argument made on the original motion. Plaintiffs' counsel now places heavy emphasis on an alleged conflict between a local and a national by-law as the source of the non-specificity of the charges, and the unfairness of the hearings. The local by-law is absolutely clear and it forbids plaintiffs' actions.[1] It was for violation of this by-law that plaintiffs were expelled. It may well be that the national by-law limits the applicability or enforcement of the local by-law in some instances. But unless the local by-law is patently unfair or its enforcement would clearly result in an unfair labor practice, the extent to which the local by-law shall be circumscribed by a national by-law is a matter for the union to decide by its own adjudicative processes. Section 101(a) (5) of the Labor-Management Reporting and Disclosure Act, 29 U.S.C. § 411(a) (5), merely requires that these processes be fair and orderly in accordance with due process. In our opinion that requirement was satisfied in this instance.[2]

If this court's view of the applicable law as outlined in the original memorandum is correct, it is clear from the pleadings and affidavits already submitted that there is no genuine issue as to any material fact. See Rule 56, Fed.R.Civ.P. Accordingly, defendants' cross-motion for summary judgment is granted.

So ordered.

1. Art. IV, § 1, para. H., Constitution and By-Laws of the Associated Musicians of Greater New York, Local 802 (quoted at p. 2 of the first memorandum).

2. See footnote 4 in the original memorandum.