C. Clark **KISSINGER,** Paul Booth and Lee Baxendall, on behalf of themselves, and on behalf of all other persons similarly situated as members of Students for a Democratic Society, and on behalf of such Committee, Plaintiffs,

v.

NEW YORK CITY TRANSIT AUTHOR-ITY, New York Subways Advertising Co., Inc., Joseph E. O'Grady, John J. Gilhooley, Daniel T. Scannell, Thomas O'Ryan and John P. Cullen, Defendants.

66 Civ. 836.

United States District Court
S. D. New York.

Sept. 12, 1967.

**440**

Jeremiah S. Gutman, New York City, for plaintiffs. Stephen A. Hopkins, New York City, of counsel.

Sidney Brandes, Brooklyn, N. Y., for defendants New York City Transit Authority, Joseph E. O'Grady, John J. Gilhooley and Daniel T. Scannell. Edward W. Summers, Brooklyn, N. Y., of counsel.

Reavis & McGrath, New York City, for defendants New York Subways Advertising Co., Thomas O'Ryan and John P. Cullen. Martin D. Jacobs, New York City, of counsel.

## MEMORANDUM

BONSAL, District Judge.

Plaintiffs, members of "Students for a Democratic Society" (Students), bring this action under 42 U.S.C. § 1983 seeking a declaratory judgment that the defendants are required to accept for display on the walls in New York City subway station platforms two posters (the posters) opposing United States participation in the war in Vietnam. Plaintiffs contend that this court has jurisdiction based upon 28 U.S.C. § 1343(3).

Pursuant to a contract dated April 4, 1962, the defendant New York City Transit Authority (the Authority), agreed with the defendant New York Subways Advertising Co., Inc. (the Advertising Company) to permit the Advertising Company to place and maintain advertisements in the cars of subway trains and on the walls in subway stations operated by the Authority. The Authority and the Advertising Company admit they refused to accept the posters for display. Plaintiffs allege they requested the Authority and the Advertising Company to accept the posters for display at the same rates for advertising space and upon the same terms applicable to all others seeking advertising space, and allege that the refusal of the Authority and the Advertising Company to accept the posters for display was due to the controversial and unpopular nature of the views expressed, thus depriving the plaintiffs of their rights to freedom of speech guaranteed by the First and Fourteenth Amendments to the United States Constitution. Plaintiffs move pursuant to Rules 12 and 56, F.R.Civ.P., for summary judgment.

The posters carry a picture of a child with what appears to be a scarred back and arm and on the left side of the posters the following words appear in large lettering:

"WHY ARE WE BURNING, TORTURING, KILLING, THE PEOPLE OF VIETNAM?—TO PREVENT FREE ELECTIONS"

In smaller lettering the posters continue:

"PROTEST this anti-democratic war WRITE President Lyndon B. Johnson, The White House, Washington, D. C.

GET THE STRAIGHT FACTS WRITE

Students for a Democratic Society* 119 Fifth Avenue, New York, N. Y. 10003"

In small print the poster states:

"This 10-year old girl was burned by napalm bombs"

In 1965 plaintiffs engaged Blumberg & Clarich, Inc. to place the posters on New York City subway station platforms and in a letter dated October 7, 1965 the Advertising Company notified Blumberg & Clarich, Inc. of its refusal to accept the posters. The letter was signed by

---

* One poster carries the name of Students and its address; the other poster carries the name of a subcommittee of Students, "The New York Committee to End the War in Vietnam," and its address.

John P. Cullen, Secretary of the Advertising Company and reads as follows:

> "This will acknowledge receipt of your letter of September 29, 1965 requesting a Standard Showing of 30 x 46″ posters for your client, the New York Committee to End the War in Vietnam.
>
> As I explained to you on our previous telephone conversation, we are in a very 'tight' position with regard to space available at the present time and our present commitments would preclude taking additional contracts at this time.
>
> In addition, the copy submitted is entirely too controversial to be posted on the stations publicly owned by the New York City Transit System. Our policy has always been to refrain from accepting business, the display of which would be objectionable to large segments of our population.
>
> We regret that we will be unable to accept your proffered contract at this time."

The Authority, created under the New York Public Authorities Law, McKinney's Consol.Laws, c. 43–A, §§ 1200–1221, is a "public benefit corporation" (§ 1201(1)) and it operates a subway or rapid transit system in all the boroughs of New York City except Richmond (Staten Island). The subway covers a route of more than 222 miles and there are 482 subway stations. Admission is open to the public upon the payment of a fare and on an average week day, the subway carries over 4½ million passengers. The Advertising Company is a New York corporation with its principal place of business in New York. The contract of April 4, 1962 between the Authority and the Advertising Company provides in Article Five that:

> "The [Advertising Company] agrees * * * no sign or advertisement shall be or contain anything unlawful, immoral or offensive to good taste, and in that respect all advertising matter shall be subject to the approval of the Authority. The [Advertising Company] also agrees that if any signs or advertisements are objectionable to the Authority, they will be removed immediately."

Since the Authority is a "public benefit corporation" created by a specific New York statute and operates a public rapid transit system, and since the Authority has the power to approve or reject advertising to be placed by the Advertising Company, the refusal by the Authority and the Advertising Company to accept the posters for display constitutes "state action" for purposes of 42 U.S.C. § 1983 and the Fourteenth Amendment (see, e. g., Burton v. Wilmington Parking Authority, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961); Wolin v. Port of New York Authority, 268 F.Supp. 855 (S.D.N.Y.1967); Farmer v. Moses, 232 F.Supp. 154 (S.D.N.Y.1964); Anderson v. Moses, 185 F.Supp. 727 (S.D.N.Y.1960)), and plaintiffs' allegations that they have been deprived of rights guaranteed under the First and Fourteenth Amendments are sufficient to give the court jurisdiction under 28 U.S.C. § 1343(3). See, e. g., Douglas v. City of Jeannette, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324 (1943); Hague v. C. I. O., 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939); Stein v. Oshinsky, 348 F.2d 999 (2d Cir.), cert. denied, 382 U.S. 957, 86 S.Ct. 435, 15 L.Ed.2d 361 (1965).

Defendants contend that the refusal to accept the posters for display did not deprive the plaintiffs of their Federal constitutional rights for two reasons. First, defendants point out that the Advertising Company, with the approval of the Authority, has limited the advertising it will accept to: a) commercial advertising for the sale of goods, etc.; b) public service announcements; and c) political advertising at the time of and in connection with elections.[1] Plaintiffs' posters

---

1. The advertising has been limited to these three categories as a matter of practice and not by reason of statute or regulation or by reason of any provision in the April 4, 1962 contract between the Authority and the Advertising Company other than Article Five quoted at page 441, supra.

did not come within any of these categories.[2] Second, defendants point out that the Authority is responsible for the safe operation of the subways and has a duty to protect subway passengers from the possibility of physical harm. Defendants argue that the posters are provocative and inflammatory and would be displayed to a large "captive audience" in the confined areas of the subways. Under these circumstances, defendants say the posters would be likely to cause serious disturbances, disorder and vandalism, endangering safety in the subways and interfering with the transportation of passengers.[3]

■ Absent a showing that the posters would present a "clear and present" danger (see, e. g., Schenck v. United States, 249 U.S. 47, 52, 39 S.Ct. 247, 63 L.Ed. 470 (1919)), the guarantee of freedom of speech under the First and Fourteenth Amendments extends to plaintiffs' posters (see, e. g., Cantwell v. State of Connecticut, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940); Schneider v. State of New Jersey, 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155 (1939)), and although it may be that the Authority and the Advertising Company could refuse to accept all posters for display in the subways (see Danskin v. San Diego Unified School District, 28 Cal.2d 536, 171 P.2d 885 (1946); but see Wolin v. Port of New York Authority, supra; cf. Barron, "Access To The Press—A New First Amendment Right," 80 Harv.L.Rev. 1641 (1967)), the Authority and the Advertising Company cannot accept some posters and refuse the plaintiffs' for reasons that conflict with the First Amendment guarantee of the right to freedom of speech. See Danskin v. San Diego Unified School District, supra; East Meadow Community Concerts Association v. Board of Education of Union Free School Dist. #3, 18 N.Y.2d 129, 272 N.Y.S.2d 341, 219 N.E.2d 172 (1966), after remand, 19 N.Y.2d 605, 278 N.Y.S.2d 393, 224 N.E.2d 888 (1967); Buckley v. Meng, 35 Misc.2d 467, 230 N.Y.S.2d 924 (Sup.Ct.N.Y. Co. 1962); Van Alstyne, "Political Speakers at State Universities," 111 U.Pa.L.Rev. 329, 337–38 (1963).

■ Plaintiffs' posters are an expression of political views. They are not obscene or profane. Compare Chaplinsky v. State of New Hampshire, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942). Consequently, the Authority and the Advertising Company cannot refuse to accept the posters for display unless the posters present a serious and immediate threat to the safe and efficient operation of the subways. See Terminiello v. City of Chicago, 337 U.S. 1, 69 S.Ct. 894, 93 L.Ed. 1131 (1949); Cantwell v. State of Connecticut, supra; Schneider v. State, supra; see generally Bridges v. State of California, 314 U.S. 252, 261–263, 62 S. Ct. 190, 86 L.Ed. 192 (1941); compare Feiner v. New York, 340 U.S. 315 (1951). The Supreme Court in Cantwell v. State of Connecticut, supra, 210 U.S. at 308, 60 S.Ct. at 905 stated the test in these terms,

"When clear and present danger of riot, disorder, interference with traffic upon the public streets, or other immediate threat to public safety, peace, or order, appears, the power of the

---

2. Among the posters that have been accepted for display, however, are the following:
   1) "U.S.O. is there only if you care * * *."
   2) "Religion in American Life, give them a faith to live by * * *"
   3) Radio Free Europe—"The Iron Curtain isn't soundproof"
   4) "Radio Free Europe—She can't come to you for the truth"
   5) "Read Muhammed Speaks newspaper. * * *"

6) U.S.O.—"U.S.O. is there only if you care * * * Give!"

3. Other than the practice with respect to the three categories of advertising that the Authority and the Advertising Company will accept for display, the Authority and the Advertising Company, in rejecting the posters, were not following a previously decided upon policy or practice as to which posters would endanger safety in the subways.

state to prevent or punish is obvious. Equally obvious is it that a state may not unduly suppress free communication of views, * * * under the guise of conserving desirable conditions."

 The Authority and the Advertising Company cannot refuse to accept the posters for display because they are "entirely too controversial" and "would be objectionable to large segments of our population." (letter from John P. Cullen, dated October 7, 1965). See Terminiello v. City of Chicago, supra, 337 U.S. at 4, 69 S.Ct. at 896.[4] However, the defendants contend that the posters would seriously endanger safety in the subways; would give rise to a "clear and present" danger.[5] This contention raises questions of fact which can be resolved only at trial.[6]

Accordingly, plaintiffs' motion for summary judgment is denied.

It is so ordered.

4. "a function of free speech * * * is to invite dispute. * * * Speech is often provocative and challenging. It may * * * have profound unsettling effects as it presses for acceptance of an idea. That is why freedom of speech * * * is * * * protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest."

5. The posters however, may involve less danger to safety than other forms of expression such as picketing or live speakers (compare Wolin v. Port of New York Authority, supra; Farmer v. Moses, supra) since no person is physically publicizing the views expressed in the posters.

6. Defendants also argue that if they accept the posters for display, they will have to accept other posters relating to United States participation in the war in Vietnam with the result that commercial advertising will be curtailed and the subways will become a political and ideological battlefield. Even if the Authority and the Advertising Company are required to accept the posters for display, however, it does not follow that others must be accepted, and, in addition, the Authority and the Advertising Company could impose rea-

sonable regulations on the display of plaintiffs' posters and others of a similar nature as to the number to be displayed and the time and place for their display. See Farmer v. Moses, supra 232 F.Supp. at 162. The imposition of reasonable regulations sufficiently protects the Authority and the Advertising Company from the type of injury described by the California Court of Appeal in Wirta v. Alameda-Contra Costa Transit District, 61 Cal.Rptr. 419 (First Appellate District, Division One, August 11, 1967), viz., the possibility that commercial advertising will be preempted and that other persons will be deprived of advertising space. In addition, *Wirta* is distinguishable since there the Transit District in refusing the advertising that was offered for display reaffirmed a "previously expressed policy concerning political advertising" by adopting a resolution stating that political advertising would be accepted only "in connection with and at the time of a duly called election * * *." Although defendants contend that the Authority and the Advertising Company have similarly limited political advertising to advertising in connection with and at the time of duly called elections (see page 441 supra), other posters of a political nature have nevertheless been accepted. See note 2, supra at 441.