**IMPEACH NIXON COMMITTEE and Lynne Heidt, Plaintiffs-Appellants,**

v.

**Thomas BUCK et al., Defendants-Appellees.**

**No. 74-1186.**

United States Court of Appeals, Seventh Circuit.

Argued April 18, 1974.

Decided April 23, 1974.

Certiorari Granted Oct. 21, 1974. See 95 S.Ct. 169.

Jacob Pomeranz, Sybille C. Fritzsche, Chicago, Ill., for plaintiffs-appellants.

Norman J. Barry, John J. Devine, Chicago, Ill., for defendants-appellees.

Before FAIRCHILD, CUMMINGS and PELL, Circuit Judges.

PER CURIAM.

This matter first came to the attention of this division of the Court on March 15th after plaintiffs filed a motion for injunction pending appeal and defendants opposed the motion. Because the three judges did not agree that an injunction pending appeal should issue forthwith, no injunction was then issued; but we did agree that the briefing and hearing on the merits of the appeal from the denial of the preliminary injunction should be accelerated, and oral argument was heard on April 18, 1974. We reverse.

Plaintiffs seek a preliminary injunction ordering the defendants to accept their public announcement (Appendix, for posting in the Chicago Transit Authority's vehicles and stations. In December 1973, the plaintiffs had sought to place this announcement with the CTA by contacting Metromedia, Inc., CTA's advertising agent. Metromedia tentatively accepted the announcement pending Chicago Transit Authority approval required for any potentially controversial announcement. Defendant Buck, Director of Communications and Marketing for CTA, refused to accept the announcement. Plaintiffs attempted to discuss defendant Buck's decision with one or more members of the CTA Board, also defendants in this case, but received no response.

Plaintiffs then filed a motion for a preliminary injunction. This was denied by the district court on March 1, 1974, and that denial is the subject of this appeal. The district court found

that the CTA has had a uniform policy of rejecting advertisements similar to the one in question. But that court also indicated that the CTA has accepted advertisements which promote candidates for political office, advertisements which express an opinion on the issue of a Regional Transit Authority and at least one advertisement setting forth an anti-Vietnam War position (acceptance of which was part of a settlement of federal litigation). The district court found that these advertisements are political in a different sense from the one that the plaintiffs want posted. At this time, we do not see any essential difference between the plaintiffs' announcement and these other advertisements as far as their political nature is concerned. It thus appears that the plaintiffs are likely to be ultimately successful on the merits. Wirta v. Alameda-Contra Costa Transit District, 68 Cal.2d 51, 64 Cal. Rptr. 430, 434 P.2d 982 (1967); Kissinger v. New York City Transportation Authority, 274 F.Supp. 438 (S.D.N.Y. 1967); Hillside Community Church, Inc. v. City of Tacoma, 76 Wash.2d 63, 455 P.2d 350 (1969); see also Police Department of Chicago v. Mosley, 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212; Lee v. Board of Regents of State Colleges, 441 F.2d 1257 (7th Cir. 1971); cf. Wolin v. Port of New York Authority, 392 F.2d 83 (2d Cir. 1968), certiorari denied, 393 U.S. 940, 89 S.Ct. 290, 21 L. Ed.2d 275. Given the nature of this announcement and the involvement of First Amendment rights, the plaintiffs would suffer irreparable injury if they are not granted a preliminary injunction at this time.

Accordingly, the trial court's order of March 1, 1974, is reversed and remanded for the entry of a preliminary injunction directing defendants-appellees to authorize and direct Metromedia, Inc. to accept the plaintiffs' announcement attached as the Appendix to this order for placement in CTA vehicles and stations in accordance with Metromedia's normal policy.

The mandate shall issue April 29, 1974.

APPENDIX

To

IMPEACH NIXON

Call: 475–5466

Impeach Nixon Committee
1043A Chicago Avenue
Evanston, Illinois 60202

PELL, Circuit Judge (dissenting).

Rule 41 of the Federal Rules of Appellate Procedure (one of the guidelines under which this court normally discharges its deliberative procedures) provides in part: "The mandate of the court shall issue 21 days after the entry of judgment unless the time is shortened or enlarged by order."

Today, two judges of this court have entered a judgment reversing the order of a federal district court and, without request by the appealing parties, have ordered that the mandate of this court shall issue in six days.

The judgment of this court, which is being entered on the third working day after oral argument was heard in this case and the fourth working day after the final brief was filed, is being given precedence in a court with a heavy workload with many important and significant decisions which have been awaiting dispositive decisions for weeks, indeed months.

Nevertheless, such expedited handling may be justified under some circumstances. "[T]iming is of the essence in politics. It is almost impossible to predict the political future; and when an event occurs, it is often necessary to have one's voice heard promptly if it is to be considered at all." Shuttlesworth v. Birmingham, 394 U.S. 147, 163, 89 S. Ct. 935, 945, 22 L.Ed.2d 162 (1969) (concurring opinion of Mr. Justice Harlan).

Turning to the litigation before us, and it is that case and that case alone with which we should be concerned, the necessity for acceleration appears to be for the most part *sua sponte* on the part

of this court, a feeling which appears not to be fully shared by the plaintiffs. The plaintiffs did not seek a preliminary injunction for some two months after the notification to them of the nonacceptability of their proposed advertisement. The district court denied the plaintiff's motion for preliminary injunction on February 28, 1974, but the plaintiffs have not sought any discovery nor have they otherwise taken steps to secure a final disposition of their case in the district court.

Their course in the trial court seems to have been sound strategically for they have now secured in this court, while by-passing the district court, the ultimate relief which they sought in the lower court.

An injunction ordinarily is a judicial prohibition of some action or, in other words, the enjoined person is stopped from doing something. A preliminary injunction accomplishes that stoppage while the action is pending in the trial court and if, following a full development of the pertinent evidence, the prohibition is legally and equitably correct, the injunction becomes permanent.

Here, however, the defendants are not to be ordered to stop doing something but they affirmatively are to be ordered "to place within vehicles and stations under their jurisdiction the paid announcements of Plaintiffs." The extraordinary relief which plaintiffs requested, and which is now being granted, although titled as a preliminary injunction, will not merely maintain the status quo pending the action but will place their announcements *now* in facilities designed to accommodate the transportation needs of the public.

If, as the appellants contend, the denial by the district court of the mandatory preliminary injunction sought by the appellants was a clear-cut violation of First Amendment rights of the appellants, I would have no hesitation in joining in the order issued by the majority of this panel.

I have made my position clear with respect to the importance of the issue in other opinions written for this court. Thus, in Collin v. Chicago Park District, 460 F.2d 746, 751 (7th Cir. 1972), I stated:

"Despite dissenting opinions now and then in particular contexts, the pillar of recognition [of the First Amendment guarantee of freedom of speech and freedom of assembly] has remained staunchly resistant to chipping efforts emanating from a distaste for the words spoken or desired to be spoken or because of the purpose or ideology of the group assembling or proposing to assemble."

Also, in United States v. Dellinger, 472 F.2d 340 (7th Cir. 1972), cert. denied, 410 U.S. 970, 93 S.Ct. 1443, 35 L. Ed.2d 706 (1973), in a separate opinion I stated:

"The plain language of the First Amendment to the Constitution of the United States of America is 'Congress shall make no law . . . abridging the freedom of speech . . . .' While 'freedom of speech' is not an absolute right and proper curbs have been spelled out by the judiciary, *e. g.*, in the area of libel, the word 'speech' itself is not qualified by a limitation of subject matter to innocuous mundanities. Imaginative or stirring ideas and idealistic beliefs are equally within its sweep. Speech without effective communication is not speech but an idle monologue in the wilderness. Communication involves listeners. A 'law' which upon reasonable construction would, by its deterrent threat of punishment for the mere expression of ideas or beliefs, cellularly isolate the speaker from potential listeners in all of the states of the Union except his own would, in my opinion, abridge freedom of speech.

\*     \*     \*     \*     \*     \*

It is because of my underlying belief in the preservation of that freedom [of an interchange of ideas and be-

liefs] that I have written as I have herein." 472 F.2d at 414–416. [Footnote omitted.]

It appears to me that a serious threshold question exists in the present case as to whether there is any proper record on which to base either an affirmance or reversal of the district court's action. In 11 Wright & Miller, Federal Practice and Procedure: Civil § 2949 (1973), the authors state:

"Evidence that goes beyond the unverified allegations of the pleadings and motion papers must be presented to support or oppose a motion for a preliminary injunction." [Footnote omitted.]

Indeed it has been stated that "[a]s support for a preliminary injunction the court can consider only facts presented by affidavit or testimony and cannot consider facts provable under the modern liberal interpretation of the complaint but which have not been proved. Indeed, proof to support a preliminary injunction must be strong and clear in view of the restraint put upon the defendant at a time before his liability has actually been adjudged." Societe Comptoir De L'Indus. v. Alexander's Dept. Stores, 190 F.Supp. 594, 601–602 (S.D. N.Y.1961), aff'd, 299 F.2d 33 (2d Cir. 1962).

In the present case while the complaint was verified (although at least one of the complaint's allegations was on information and belief), there were no affidavits submitted and no testimony heard. The parties, however, in oral argument have indicated that there was no substantial dispute with regard to the facts as found in the district court's order denying the preliminary injunction, and while it appears to me that such an uncertain record is an unstable basis on which to reverse a district court because of an abuse of discretion, nevertheless, I will take the facts, sparse though they may be, as they have been stated by the parties.

The basis of our review of the denial of a preliminary injunction is indisputa-

bly established by cases such as Progress Development Corporation v. Mitchell, 286 F.2d 222, 229 (7th Cir. 1961), where then Chief Judge Hastings said for this court the following:

"Further, it is well established that the issuance of a temporary injunction rests in the sound discretion of the trial court. On appeal, an order granting or denying such an injunction will not be disturbed unless there is a clear showing of an abuse of the discretion so exercised. Meccano, Ltd. v. John Wanamaker, 1920, 253 U.S. 136, 141, 40 S.Ct. 463, 64 L.Ed. 822; Westinghouse Electric Corp. v. Free Sewing Mach. Co., 7 Cir. 1958, 256 F. 2d 806, 808, and cases cited therein."

See also, Allied Theatre Owners of Indiana, Inc. v. Volpe, 426 F.2d 1002 (7th Cir. 1970).

In equity suits, the district court has a wide discretion to issue or withhold a temporary injunction and ordinarily this court will not interfere. Hulburt Oil & Grease Co. v. Hulburt Oil & Grease Co., 346 F.2d 260, 263 (7th Cir. 1965).

In the context of that established law which is that which should apply in this case, I turn to the particular facts and issues presented.

In so doing, I am assuming that the reference to the political nature of the plaintiffs' proposed advertisement is not intended to be equated with partisan political considerations. Without apparently even according recognition to this initial differentiation between the advertising that was accepted from political candidates and that proposed here, the majority opinion without analysis states that there is no "essential difference between the plaintiffs' announcement and these other advertisements as far as their political nature is concerned."

On the basis of the findings of fact which are not shown to be incorrect, let alone clearly erroneous, there is in my opinion a deep running fissure of mean-

ingful significance between the three categories of advertising which have been heretofore accepted by the CTA and that proposed by the plaintiffs. It is, it appears to me, the existence or lack of existence of a significant differentiation between that which has been done and that which has been proposed which forms the crucial issue here of whether we can now say that the plaintiffs have clearly demonstrated likelihood of ultimate success predicated on a denial of equal protection of the laws in violation of the Fourteenth Amendment.

If there had been a situation here where the CTA had accepted only commercial advertisements then the case of Lehman v. City of Shaker Heights, 34 Ohio St.2d 143, 296 N.E.2d 683 (1973), would appear to have sufficient direct bearing to preclude our saying that the district court had clearly abused its discretion in finding that the CTA facilities do not constitute a public forum for advertising of the type here proposed.

This result would not be because of any binding effect of a decision of the Ohio Supreme Court on this court but because *Lehman* has been argued in the Supreme Court of the United States and is pending decision there.

In *Lehman*, the City of Shaker Heights Rapid Transit District, and its advertising agent, Metromedia, Inc., refused to place an ad urging the candidacy of an aspirant to political office. The defendants had previously accepted commercial advertisements for display on the vehicles and structures of the transit system. The Supreme Court of Ohio, in affirming the Ohio Court of Appeals, ruled the advertising space was *not* a public forum. At p. 685 the Court stated:

"There is an obvious and fundamental difference between transit vehicles and communications media such as newspapers, magazines, radio and television, the primary purpose of each of

which is to serve as a forum for the exchange and interplay of ideas. The city has not opened up its transit vehicles to any exchange or presentation of ideas, political or otherwise."

In specific reference to the First Amendment question, the Ohio Supreme Court stated at p. 685:

"In other words, the constitutionally protected right of free speech with respect to forums for oral speech, or the dissemination of literature on a city's streets, does not extend to commercial or political advertising on rapid transit vehicles."

The Ohio Supreme Court further found no denial of equal protection in that all persons within the same class were treated alike. (296 N.E.2d at 686).

But in the CTA facilities, as has already been noted, other non-commercial advertisements have been accepted and we therefore have the question of whether the proposed announcement of the plaintiffs may reasonably be deemed to be within or without the ambit of the classification heretofore established.

In oral argument, counsel for the defendants argued that the proposed advertisement was of "an opinion" type which was not accepted by the CTA. While this categorization would appear to be so on the vague side as to provide insufficient guidance, *e. g.*, urging participation in the Girl Scout movement connotes someone's opinion that this is a worthwhile endeavor, defense counsel gave as illustrations advertisements for or against abortion and those which would reflect derogatorily on a particular race or religion. The district court did find that the CTA "did have and now has a uniform policy of rejecting ads similar to the one attached to the Complaint." Unfortunately, the meagre record does not show the scope nor exact extent of this uniform policy as no evidence was received. This matter, of

course, can be properly explored on final hearing.

In the meantime, for the present purpose we have the three acceptance situations which plaintiffs contend have opened the door for their advertising: (a) an advertisement setting forth an Anti-Vietnam War position; (b) one urging support of the Regional Transportation Authority (RTA); and (c) advertisements promoting candidates for political office. The three categories have a common denominator. In each, the public is urged to take a position in a situation in which the stand taken will be directly influential on the achievement of a particular result. This is especially so as to the second and third categories. The RTA is the name given to a legislative enactment creating a merged transportation system of the six counties in the Chicago, Illinois area. Federal funding was involved and the claim had been made that the Chicago Transit Authority could not survive unless it became a part of an overall multi-county transportation system. The legislation, however, was not effective upon departure from the state capital but required affirmative referendum approval by voters in the affected counties.

Likewise as to the political candidates, those who would be using the CTA facilities would be for the most part those who would be voting directly on the candidates whose virtues were being touted. The Anti-Vietnam war continuance was one which was not the subject of direct ballot box action by people using the CTA facilities but presumably the issue was one on which members of Congress would respond to the will of the people.

In addition to the common strain, the RTA issue as already noted was apparently believed by the CTA functionaries to be vital to its very existence. The Anti-Vietnam war advertisement was accepted pursuant to a decree entered in litigation and such a duress basis does not appear to me to reflect upon whether the CTA had opted to become a public forum for all types of expression.

On the other hand, I cannot conceive that the purpose of the plaintiff committee does have a direct bearing on the resolution of the presidential impeachment issue, nor do I conceive that it should have an indirect bearing. According to Article I of the United States Constitution, the House of Representatives "shall have the sole Power of Impeachment," and the "Senate shall have the sole Power to try all Impeachments." As I read these provisions, which perhaps fortunately for the stability of our nation have had little occasion for interpretation, the House of Representatives is in effect to bring an indicment when it determines as a matter of probable cause that there exists "Treason, Bribery, or other high Crimes and Misdemeanors."

I decline to think that members of the House of Representatives will reach this awesome decision on a nose-count basis of their constituents. I would likewise decline to think that a grand jury should bring an indictment because a substantial part of the citizenry were of the opinion that a particular person was guilty of a crime just as I would not believe that the CTA would be denying equal protection because it declined an advertisement urging that a public official of the city should be indicted even though it was simultaneously accepting that official's advertisement advancing his reelection.

What I have said, of course, does not mean that every person is not free, whether his expression has any bearing on the determination of the issue or not, to state his beliefs and opinions, whether logical or illogical, supported or fanciful, properly or venomously motivated, on the impeachment issue. Whether these expressions take the form of speech, pamphlets distributed in public places, letters, or even bumper-stickers is immaterial. It is the Constitution-

given right to sound off. This, however, does not reach the question of the validity of the differentiation in classification for which the defendants contend. It in my opinion has sufficient validity that we should not reach the conclusion that the district court abused its discretion.

As a matter of fact, the majority opinion is singularly silent as to the question of abuse of discretion. Since such a determination is crucial to the issue before us I will assume that such a determination is implicit in the majority opinion.

Further, as reflecting on the issue before this court, it must be noted that in most of the cases relied upon by the plaintiffs, the transit system was named as a party. Here, neither the Chicago Transit Authority nor its advertising agency, Metromedia, Inc., is named as a party and they thereby are not made subject to the jurisdiction of this court. I find it rather startling that corporate entities are proceeded against through the backdoor method of orders directing their officers to do something that must ultimately be the act of the principal not the agent. The district court in denying the preliminary injunction doubted "that all parties necessary to effectuate the relief prayed for by the plaintiffs have been joined as defendants." I share that doubt but again for the present purposes of determining whether there has been an abuse of discretion, the unresolved question of proper parties merely fortifies my opinion that we cannot say there has been such an abuse as to require a reversal at this juncture.

The cause which the plaintiffs presumably are espousing is one which has for some months preempted a substantial portion of the space and time of the media primarily designed, as the CTA is not, for the dissemination of news, ideas, and expressions. That the issue may be one of overriding national importance, even though it may be coupled with claimed violations of precious First Amendment rights, does not, in my opinion, justify this court in deviating from established orderly procedures. Neither the high respect we pay to preventing infringements upon freedom of expression nor the importance of the contextual issue should cause this court to fail to adhere to fundamental concepts of due process to which every litigant, large or small, public or private, is entitled.

I therefore respectfully dissent.